# Supreme Court of the Navajo Nation

**Reservation Business Services, Petitioner,**
v.
**Austin and Elizabeth Albert, Respondents.**
**Decided March 16, 1995**

## OPINION

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Opinion delivered by YAZZIE, Chief Justice.

This is an original proceeding to answer five certified questions from the Tuba City District Court. Jurisdiction is based upon the Navajo Nation Supreme Court's supervisory control over the trial courts. The questions posed are of first impression, and they address a common legal remedy which affects all trial courts. Given the nature of the issues, this Court exercises its discretionary jurisdiction to provide guidance. The questions are of material importance to the law of the Navajo Nation, and they are issues of substantial public interest.

I

The facts of the certified questions appear in the Tuba City District Court's certification and they are stated below.

In 1989, Austin and Elizabeth Albert, the respondents in the Tuba City case, purchased a 1979 Redman New Moon mobile home from Leisure Development. The sale is governed by a retail installment contract and security agreement which Leisure Development assigned to Security Pacific Housing, a finance company. Security Pacific assigned its interests under the agreement to Reservation Business Services, the plaintiff in the Tuba City suit. Reservation Business Services' primary business is the repossession of secured personal property.

Reservation Business Services filed its repossession action in the Tuba City District Court on July 30, 1993. The action is based upon 7 N.T.C. § 607(2) (1968), which prohibits the repossession of secured personal property within the Navajo Nation without the written consent of the debtor in possession or an order of a court in "an appropriate legal proceeding." The plaintiff relies upon the Rules of Repossession of Personal Property Proceedings (1982), which establishes the "appropriate" legal proceeding in our legal system.

On September 24, 1993, the respondents moved for dismissal of the action

pursuant to Rule 12(b)(3) of the Navajo Rules of Civil Procedure. That rule provides that the defense of improper venue for an action may be raised in a motion to dismiss. The ground for the motion is that the mobile home is located in the St. Michaels Chapter of the Navajo Nation, which is approximately 150 miles east of Tuba City. The certification does not state, but we assume, that the respondents reside in the mobile home at St. Michaels. The plaintiff responds that venue, or the proper place to hear the case, lies in Tuba City, because of a demand letter to bring the account current made there.

The certification does not state the parties' contentions regarding the proper procedural rules for repossession actions, but it does conclude that there are questions about the validity of the 1982 repossession rules.

## II

The trial court poses five questions of law, which we restate to better frame them for resolution. They are:

1. Which court rules apply to repossession actions, the 1982 Rules of Repossession Proceedings, the 1989 Rules of Civil Procedure, or both?

2. What is the proper venue or judicial district for repossession proceedings where the property or parties are located within a particular judicial district, and what is the remedy under our rules where an action is brought in the wrong judicial district?

3. What is the rule for defaults in repossession proceedings?

## III

In 1968, the Navajo Nation Council addressed an issue of great importance to the consumers of the Navajo Nation. The general law of the United States, enshrined in the Uniform Commercial Code, allows self-help repossession of personal property when there is a default under a purchase agreement. In other words, a creditor has a general right to repossess secured property without notice to the debtor when the creditor determines the purchase agreement is broken by the debtor. The Navajo Nation Council, in Resolution No. CF-26-68 (February 7, 1968), declared the public policy of the Navajo Nation that self-help repossession of secured personal property is illegal, and that secured creditors must obtain the written consent of the debtor prior to repossession or obtain a court order permitting repossession. The preamble to the resolution declares that a creditor or security holder must be in "strict compliance" with the statute. *Id.* Preamble, § 2. The Council declared that the proper remedy for repossession actions is the common law action of replevin. *Id.* § 52(b).

In 1969, the Navajo Nation Council revisited the issue and declared that the purpose of our law is "to prevent violence and breach of the peace in the repossession of personal property...." Resolution No. CJN-53-69 (June 4, 1969), Preamble at § 5.

The supervised repossession law was popular with Indian nations, and several other jurisdictions adopted it. It was not popular with creditors. We note that perhaps more than any other Navajo Nation statute, our repossession law has been the pretext for federal court challenges, comity disputes in surrounding states, and litigation within the Navajo Nation. Although the Navajo Nation Council has full authority to regulate commercial transactions within our territorial jurisdiction, dissatisfied lenders and collection agencies continue to resist our repossession law and our consumer protection policy.

One such challenge was pending in the federal courts when the 1982 repossession rules were adopted by the Judicial Conference of the Navajo Nation. On July 16, 1981, the Office of the Navajo Nation General Counsel reported that our statute, 7 N.T.C. § 609, had survived a challenge in the U.S. District Court for the District of Arizona, *Babbit Ford, Inc., and Gurley Motors v. Navajo Tribe*, 519 F. Supp. 418, *aff'd in part, rev. in part*, 710 F.2d 587 (9th Cir. 1983), *cert. denied* 466 U.S. 926 (1984), but that an appeal by the plaintiffs in that action was possible. *Navajo Law Journal* 4000 (1982). The statute, at 7 N.T.C. § 607(2), did not state the "appropriate legal proceeding" for a repossession order, but the Council declared its intent to provide the common law remedy of replevin in Section 2(b) of the 1968 resolution.

"Replevin is one of the most ancient and well-defined writs known to the common law." 66 Am. Jur. 2d *Replevin* § 1 (1973). "Replevin is a proceeding by which the owner or one who has a general or special property in the chattel taken or detained seeks to recover possession of that specific chattel, the recovery of damages being only an incident thereto." *Id.* § 2. It is a possessory action where a plaintiff with the right of possession to personal property seeks the return of the property or damages. *Id.* § 3.

The Navajo Nation's general counsel suggested that the Navajo Nation's interest in its repossession law could be better defended on appeal if its courts clearly defined the procedure for repossession actions. The Navajo Nation Courts have the authority to adopt rules of "pleading, practice, and procedure" to regulate proceedings before the courts. 7 N.T.C. § 601. Courts have both the inherent and statutory power to define the procedures to be used by judges, practitioners and the public to implement judicial jurisdiction. *See*, Weinstein, *Rule-making by the Courts, The Improvement of the Administration of Justice* 127-135 (Klein, ed., 6th ed. 1981). At the time, court rules were adopted by a majority vote of Navajo Nation judges, with the approval of the chief justice following review by a tribal attorney. 7 N.T.C. § 601 (1978). That procedure was used for the repossession rules.

The judges and justices of the Navajo Nation Courts have a collegiate body, the Judicial Conference of the Navajo Nation, to take action on court rules and other policy matters. The Judicial Conference met on January 29, 1982 to consider special rules for repossession actions. The Conference intended to implement the Navajo Nation Council's policy of regulating personal property repos-

session and to clearly define the procedures to be used to implement that policy.

Replevin is a cumbersome and complex judicial proceeding, which is confusing because it is an "ancient" common law writ. The Navajo Nation judges wanted a middle ground between self-help repossession and the delays of normal civil proceedings. They wanted to assure that consumers would be protected from repossession on technical grounds, while offering a prompt and efficient remedy to creditors. The choice reflected in our repossession rules is that there be a summary proceeding for creditors which allows due process protection for debtors. It modified the common law replevin action in a procedure which permits a petition, an order to show cause to the debtor, and a summary hearing to decide the propriety of repossession. The rules offer protection for purchasers of personal property on credit while assuring a healthy business climate.

At the time the repossession rules were adopted in 1982, there were general rules of civil procedure to regulate civil actions. In 1989, the Navajo Nation Supreme Court revised the civil rules to align them with general American practice. The Rules of Civil Procedure track the Federal Rules of Civil Procedure, with adjustments to conform to Navajo Nation circumstances. Rule 2 of the 1989 rules provides (as did the prior rules) that "[t]here shall be one form of action to be known as 'civil action.'"

The Navajo Nation has a mixed judicial system. That is, the Navajo Nation Courts follow general American models of practice, procedure and substantive rules while retaining traditional Navajo substantive law and procedure. One of the procedures inherited from the English-American common law is the writ system. A "writ" is a written command to "do something," it is "something short" or "a letter." It is the basis for English common law procedure. *See*, Berman, *Law and Revolution: The Formation of the Western Legal Tradition* 445-448 (1983). The king of England delegated the power to issue royal commands to the courts, and they developed a system of writs to authorize the commencement of specific suits, known as "forms of action." Glendon, et al., *Comparative Legal Traditions* 147 (1982). "The system was rigid; selection of the wrong writ resulted in dismissal." *Id.* Modern rules of civil procedure attempt to eliminate the haphazard and risky technicalities of the common law by providing for only one form of action — the "civil action." Our Rules of Civil Procedure incorporate that approach.

However, the force of tradition is strong in law. There are "general" civil causes of action where certain degrees of formality are necessary. On the other hand, there are times when the legislature creates new causes of action and requires special procedures for them. Actions, procedures and remedies which are defined by statute, are "special actions," which sometimes use procedures which are separate and distinct from the usual "civil action." Our repossession law is one of them.

The Navajo Nation Council intended, by its 1968 enactment of a law to regulate commercial personal property repossession, to protect consumers. It abolished self-help repossession and provided for a summary court remedy by way of replevin. Common law replevin procedures are encrusted with many techni-

calities and pitfalls,and the Navajo Nation Judicial Conference sought to simplify replevin procedure in repossession rules. They are a middle ground between self-help repossession and the time-consuming procedure of the "civil action" under the Rules of Civil Procedure.

We hold that repossession actions under 7 N.T.C. §§ 607-609 are a special action, defined by statute, which are primarily governed by the Rules for Repossession Proceedings (1982). To the extent the repossession rules do not address a specific procedural issue, it is resolved by the Rules of Civil Procedure (1989). As to any question about the validity of the repossession rules, we hold that they are a valid exercise of the rule making authority of the Courts of the Navajo Nation and disapprove any analysis to the contrary. See, Frye, *Lender Recourse in Indian Country: A Navajo Case Study*, 21 N.M.L.Rev. 275, 309 (1991). The repossession rules were adopted in full compliance with the rule making procedures of the time, and offer due process protections which are reasonably calculated to protect the interests of both merchants and consumers.

The district court asks for further guidance about the "time frame" for the citation method of Rule 6 of the repossession rules. Rule 6(a) requires the clerk of court to issue an order to show cause upon a repossession petition, but does not indicate the return or hearing date.

Due process requires notice and an opportunity to be heard before the taking of property. See, *Yazzie v. Jumbo*, 5 Nav. R. 75,76 (1986). The amount of notice, in terms of time, should be enough for the person to prepare for hearing. *In re Removal of Katenay*, 6 Nav. R. 81 (1989). Some court rules allow as little as three days notice before a hearing; others five; and others ten to fourteen days. The amount of time should be sufficient to allow for service of process and an opportunity to prepare for hearing. We take judicial notice that there are service of process problems in the Navajo Nation when police services are used. Therefore, a minimum of fourteen days between the issuance of the order to show cause and the hearing should be allowed, with leave for a continuance of the hearing upon application by the debtor for good cause. Judges may use their experience in a given judicial district to extend the time for a hearing, but there should be no undue delays in conducting hearings on repossession petitions. More than thirty days would be excessive.

## IV

This is a case where a commercial plaintiff seeks to obtain possession of a mobile home by filing an action in a court which lies approximately 150 miles distant from the secured property and the debtors. The certified questions from the district court show that the property and the respondents are in St. Michaels Chapter, which lies near the administrative center of Window Rock where the Window Rock District Court sits. The only interest the plaintiff has in maintaining an action in Tuba City, as disclosed by the certification, is a vague assertion

that a demand for payment was made there.

While neither our judicial code nor court rules specifically address venue (other than the general defense defined in Rule 12(b)(3) of the Rules of Civil procedure), the question of which court should hear a case given the residence of parties or location of property is governed by due process of law. Among other things, due process of law deals with fundamental fairness in court proceedings to assure that every person before the courts has a "day in court." We approach the issue of venue using principles of Navajo common law.

People do business where they live. If someone wants to deal with someone else, he or she goes to where the person actually lives. The place for planning and discussion is a person's residence site and hogan. The Navajo Nation Council's intent in framing a repossession remedy is obvious. By requiring consumer consent for repossession at the time of the taking of the property, the Council intended that the discussion take place where the person resides or the property is kept. The Council offered a supplementary remedy where consent cannot be obtained by providing for court action. The Council intended that the court action lie in the judicial district where the property is located and the consumer lives.

This case is an obvious attempt to forum-shop to a collection agency's advantage. Reservation Business Services attempted to discourage the Alberts from resisting the repossession of their mobile home by bringing an action in a distant court. The consumer who wishes to defend against repossession in a distant forum is put to the great disadvantage of having to seek counsel in a distant community. There are dangers that service of process will be delayed when sending papers to a distant court, and there are problems with the execution of judgments from distant courts.

Repossession actions must be brought in the judicial district where the personal property is normally used by the consumer or the place of residence of the consumer. The only exception is where the consumer or the property cannot be located using reasonable diligence. In that event, the proper venue is the place of residence indicated in loan papers or the last known mailing address of the debtor.

The remedy for an action brought in the wrong judicial district is governed by Rule 12(b)(3) of the Rules of Civil Procedure, namely dismissal of the action without prejudice so papers can be refiled in the proper judicial district. While our rule provides for dismissal of the action rather than transfer to the proper judicial district, we caution the court and counsel that the initial filing in the wrong district tolls the statute of limitations, and it is not a bar to a new filing.

## V

The procedure for default judgments is also a rule of due process. At common law, a default judgment was a form of contempt of court. The writ stated a fixed date when the defendant was to physically appear before the court. A failure to appear was disobedience of a royal command, punishable by contempt of court

in the form of an adverse judgment. In modern times, defendants have a deadline to "appear" by filing a response.

The procedure for defaults in repossession actions is set in Rule 55 of the Rules of Civil Procedure. Rule 55 supplements the provisions of Rule 11 of the repossession rules for noncompliance.

When granting a default judgment, the trial court must require strict adherence to the law. That includes assurances that there is personal jurisdiction over the debtor by actual notice to the debtor. That is in keeping with the command of Resolution No. CF-26-68 that personal property subject to repossession shall not be removed from the Navajo Nation "except in strict compliance" with the statute.

This cause is REMANDED to the Tuba City District Court for proceedings consistent with this opinion.